# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: ) | | |
| ) | | |
| WILLIAM A. CAREY and ) | | |
| RUBY L. CAREY ) | | CASE NO. 16-31579 |
| Debtors ) | | |
| ) | | |

| | | |
|---|---|---|
| JOSH REECE ) | | |
| Plaintiff ) | | |
| v ) | | A. P. NO.: 16-3074 |
| WILLIAM A. CAREY ) | | |
| Defendant ) | | |

## MEMORANDUM

This adversary proceeding comes before the Court on the Motion for Summary Judgment filed by the Plaintiff, Josh Reece ("Reece"). At issue is whether the debt owed to Reece is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Upon review of the motion, the supporting documents, and the response filed by the Defendant, William A. Carey ("Carey"), the Court concludes that the Motion for Summary Judgment should be granted.

### JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a).

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this dispute were summarized in the Memorandum Opinion & Order ("Memorandum") entered by the United States District Court for the Eastern District of Kentucky ("Eastern District") (Case No. 3:16-cv-00069-GFVT).

The Plaintiff, Joshua Reece, brought this action alleging that he was

> beaten by ten to twelve inmates on the instruction of Defendant Carey, a jailer at the Shelby County Detention Center, while jailed for stealing a two-dollar food item. He brought claims against many Defendants for excessive force, deliberate indifference to his medical needs, negligence, intentional infliction of emotional distress, and civil conspiracy.

See Eastern District [DN 294].

Reece filed a complaint against Carey, and others, in the Eastern District. Prior to trial, Plaintiff's remaining claims against Carey were: (1) a Fourteenth Amendment excessive force claim, actionable under 42 U.S.C. § 1983 (Count I); (2) negligence and gross negligence claims (Count II); (3) an intentional infliction of emotional distress ("IIED") claim (Count III); and (4) a conspiracy to violate constitutional rights claim under 42 U.S.C. § 1985 (Count IV). [DN 1 at ¶¶ 34, 48, 52, 55].

On May 19, 2020, Reece filed a Motion for Summary Judgment on all of his remaining claims against Carey. The District Court granted in part and denied in part the Motion for Summary Judgment. Specifically, the Motion for Summary Judgment was granted with regard to Count I, excessive force in violation of Plaintiff's Fourteenth Amendment rights, but denied with respect to Reece's remaining claims.

At the final pre-trial conference, Carey informed the District Court that he planned to stipulate liability on Plaintiff's remaining claims and proceed to trial solely on the issue of damages. Reece did not object to this stipulation. At trial, the jury was asked to determine an amount of damages recoverable by Reece for the injuries he sustained as a result of Carey's actions.

The following stipulation ("Stipulation") was provided to the jury as part of the Jury Instructions:

> "Now we will move to the issues in this case that have been determined. This case stems from events that occurred at the Shelby County Detention Center on November 18, 2015. Plaintiff Joshua

2

Reece was the subject of a physical assault by other inmates. The assault was orchestrated by a deputy jailer, Defendant William Carey, who directed inmate Corey Hopper to assault Plaintiff later in the evening. Defendant Carey never returned to the cell and did not attempt to intervene in the assault.

Defendant Carey was charged and pled guilty in state court to Official Misconduct and Complicity to Fourth-Degree Assault. He was also charged and pled guilty in federal court to a federal civil rights violation. In Defendant's federal guilty plea, he admitted that "[he] directed Inmate [Corey Hopper] to assault [Plaintiff], purposefully setting into motion an assault that resulted in serious bodily injury.' And [he] admitted that, in doing so, he willfully deprived [Plaintiff] of his constitutional right 'to be free from the use of unreasonable force by or at the direction of a deputy jailer." He further admitted to knowing Plaintiff would be assaulted, but yet, never returned to the cell during his shift to check on Plaintiff's wellbeing.

Defendant's stipulation means that you must accept as true that Defendant, while acting under color of state law and in the course and scope of his employment, deprived Plaintiff of his Fourteenth Amendment right by directing inmates to use excessive force against Plaintiff as well as failed to intervene and stop the inmates from using excessive force--one of his job duties as a deputy jailer even though he had the opportunity and means to prevent the assault. You must also accept as true that Defendant had a duty to ensure that Plaintiff received necessary medical attention after the assault, Defendant breached that duty by failing to check on Plaintiff's wellbeing, and as a result Plaintiff was injured.

In other words, in this case, you will not decide whether Defendant is legally responsible for any injury Plaintiff may have suffered as a result of the incident in question. Defendant has admitted he is legally liable. The only issue remaining for you to determine is the measure of damages, recoverable by the Plaintiff, caused by Defendant's conduct toward Plaintiff. The fact that legal liability has already been admitted to by Defendant should not unfairly bias you in favor of either party, unduly prejudice you against either party, or improperly influence you in any way in determining the specific issues submitted to you for decision. You must accept this stipulation as true and independently make your decisions about damages. In this case, Plaintiff is seeking damages for claimed physical injuries, pain and suffering, and impairment of his ability to earn money. Plaintiff

is also seeking punitive damages."

On July 9, 2021, the jury returned a Jury Verdict Form ("Verdict"). In the Verdict, the jury awarded Reece $400,604.50 for loss of earning capacity, $83,666.79 for medical expenses, $1,300,000.00 for pain, suffering, emotional distress, and loss of enjoyment of life. The jury also awarded punitive damages in the amount of $400,000. See Eastern District [DN 285].

On May 18, 2016, Carey filed a Chapter 7 petition in this Court. On October 18, 2016, Reece timely filed this adversary proceeding asking that the debt be excepted from discharge. The complaint included three separate counts. The complaint provided as follows:

> A. Count I
>
> Carey's conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of his total, deliberate and reckless disregard of and indifference to Mr. Reece's health, well-being, as well as his rights and the risk of harm to his health occasioned by such conduct. Carey is directly responsible for the assault and battery and deliberate lack of medical care while Reece was in Carey's care.
>
> As a result of the foregoing, Mr. Reece, through Carey's deliberate indifference and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment without due process of law in violation of the Fourth, Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.
>
> B. Count II
>
> Carey's treatment of Mr. Reece was so beyond the bounds of human decency that it exemplifies the tort of outrage.
>
> C. Count III
>
> Mr. Reece suffered several fractures in his head and face because of the direct actions of Carey to have him seriously harmed while incarcerated in the Shelby County Jail. Carey is responsible for aiding and abetting the assault and battery of Reece's person. Defendant Carey was prosecuted criminally and pled guilty which

should have a preclusive effect on his defense in this matter.

AP No. 16-3074 [DN1 at ¶¶ 25, 26, 28, and 30].

The prayer asked for a money judgment. It further requested that this Court find that Carey's indebtedness to Reece constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). He also requests costs and attorney's fees.

In light of the pending action in the Eastern District of Kentucky, this Court held the adversary proceeding in abeyance pending an outcome in the Eastern District litigation. As stated above, the jury rendered its Verdict on July 9, 2021.

On September 21, 2021, the District Court from the Eastern District entered a Judgment ("Judgment") in favor of Reece and against Carey based upon the unanimous Verdict. The Judgment further declared Reece the "prevailing party," which entitled him to request attorney's fees and costs. See Eastern District [DN 293].

Several months later, on February 7, 2022, and upon motion by Reece, the District Court entered the Memorandum. In that decision, the District Court ordered Reece to pay Carey a total of $254,221 in attorneys' fees, $6,875 to compensate the Reece for the time spent preparing the Motion for Attorneys' Fees, and $8,028.54 for litigation costs. These awards total approximately $269,124.54. See Eastern District [DN 294].

As stated above, Reece has now moved for summary judgment in this action. In support of his motion, Reece attached a copy of the Jury Instructions, which included the Stipulation, and the Verdict. Carey has filed a response in opposition to the summary judgment motion. Carey attached a copy of the Verdict in support of his response.

**LEGAL ANALYSIS**

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56). The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Under the Bankruptcy Code, debts arising from the willful and malicious injury by the debtor to another or another's property may be excepted from discharge in bankruptcy. 11 U.S.C. § 523(a)(6). The creditor bears the burden of proving the elements of § 523(a)(6) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

Section 523(a)(6) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

11 U.S.C. § 523(a)(6).

The term "willful" has been defined as "deliberate or intentional," *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986), with "malicious" defined as a "conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* Moreover, the United States Supreme Court has made clear that because the word "willful" in § 523(a)(6) modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury*,

6

... not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 57 (1998) (emphasis in original).

The Sixth Circuit has interpreted § 523(a)(6) to require a court to find that the debtor committed both a willful injury and a malicious injury in order for a debt to be found nondischargeable. *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999) ("the judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." Willful injuries include injuries that occur because the debtor acted with the desire to cause those consequences.) *Id.* at 464; *see also In re Schmank*, 535 B.R. 243, 264 (Bankr. E.D. Tenn. 2015). Willful injuries also include those where the debtor knew that the injury was "substantially certain" to occur as a result of his actions. *Markowitz* at 464. "Malicious", for purposes of § 523(a)(6), means "in conscious disregard of one's duties or without just cause or excuse ..." *In re Berge*, 953 F.3d 907, 915 (6th Cir. 2020). An injury is malicious if it is the result of conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm. *Id., citing Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008).

Based on the supporting materials filed, including copies of the Eastern District complaint, the Jury Instructions, which include the Stipulation, and the Verdict, there are no genuine issues of material fact that require a trial for claims covered by § 523(a)(6).

In his Motion for Summary Judgment, Reece does not ask this Court to apply the principle of collateral estoppel. Instead, he simply seeks summary judgment relying upon the Stipulation that was entered in the Eastern District action. To determine if summary judgment is appropriate, the Court must look to each count of the complaint filed in this action. As stated above, Reece filed a complaint containing three separate counts. Each count will be addressed *seriatum* below.

Count I of the complaint provides as follows:

> Carey's conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of his total, deliberate and reckless disregard of and indifference to Mr. Reece's health, well-being, as well as his rights and the risk of harm to his health occasioned by such conduct. Carey is directly responsible for the assault and battery and deliberate lack of medical care while Reece was in Carey's care.
>
> As a result of the foregoing, Mr. Reece, through Carey's deliberate indifference and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment without due process of law in violation of the Fourth, Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

A.P Doc. [DN 1].

Needless to say, this was not an artfully drafted Count. Some of the actions complained of in Count I would support an action for non-dischargeability, while others would not. For instance, intentional, deliberate, or malicious actions clearly fall within the scope of § 523(a)(6). Conversely, terms such as reckless, wanton, indifference or negligent would not support a judgment under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. at 64 ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); *In re Nevarez*, 415 B.R. 540, 545 (Bankr. D.N.M. 2009) (non-dischargeability under 11 U.S.C. § 523(a)(6) was not intended to cover reckless or negligent behavior).

Nevertheless, based upon the provisions in the Stipulation, the Court is prepared to conclude that the injuries suffered by Reece were the result of the willful and malicious actions of Carey. There can be no question that Carey's actions were intentional, and that he intended harm to befall Reece when he orchestrated the assault on Reece by other inmates. The Stipulation references criminal actions wherein Carey admitted he directed an inmate to assault Reece. Carey desired harm

8

to come to Reece. Said actions were undertaken with malice in that they were taken with the clear expectation that harm would befall Reece.

Even if the poorly pled Count I precluded summary judgment, there is no question that the Court should grant summary judgment as to Count II. Count II alleged that "Carey's treatment of Mr. Reece was so beyond the bounds of human decency that it exemplifies the tort of outrage."

Under Kentucky law, a claim for intentional infliction of emotional distress ("IIED") (sometimes called "outrage") has four elements:

> (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999) (*citing Kroger Co. v. Willgruber, Ky.*, 920 S.W.2d 61, 67 (Ky. 1996); *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)). The conduct alleged in a Kentucky IIED claim must clear a "high threshold" of outrageousness. *Lattanzio v. Brunacini*, No. 5:16-171-DCR, 2018 WL 3421825, at *5 (E.D. Ky. Jul. 13, 2018); *K.K. by and through J.K. v. Clark Cnty. Board of Education*, 439 F.Supp.3d 905, 920 (E.D. Ky. 2020).

It has long been held that IIED can support a claim under § 523(a)(6). *In re Best*, 109 Fed. Appx. 1, 5 (6th Cir. 2004) ("Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises); *In re Dardinger*, 566 B.R. 481, 500 (Bankr. S.D. Ohio 2017) ("[By] virtue of its determination that [the debtor] was liable for intentional infliction of emotional distress, the [state court] necessarily found that he 'willfully' injured [the plaintiff] within the meaning of

9

§ 523(a)(6)").

In this case, it is clear that Carey's actions satisfy the elements of IIED. First, as stated above, his conduct was intentional. Second, orchestrating an assault on a prisoner by a jailer offends generally accepted standards of decency and morality. There is never a justifiable circumstance for a jailer to direct an inmate to assault another inmate. The causal connection between the conduct and the emotional distress is clear. Finally, the emotional distress was severe.

Count III alleged Reece "suffered several fractures in his head and face because of the direct actions of Carey to have him seriously harmed while incarcerated in the Shelby County Jail. He further alleged that Carey is responsible for aiding and abetting the assault and battery of Reece's person." The Court will interpret this as a claim alleging aiding and abetting.

The concepts both of "conspiracy" and of "aiding and abetting" are well established in criminal law. In civil law, aiding and abetting and conspiracy impose joint liability for tortious harm done to another. *Cowing v. Commare*, 499 S.W.3d 291, 293–94 (Ky. App. 2016); *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Kentucky follows the Restatement (Second) of Torts, § 876 in defining the elements of aiding and abetting. *Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016). In order to prevail on a claim for aiding and abetting against Carey, Reece had to show the following elements: (1) a violation of law by Carey; (2) Carey's knowledge of the violation; and (3) Carey's conscious rendering of substantial assistance to violate the law. *Cowing* at 294. The existence of a multiplicity of actors or participants is essential to the claim. *Id.*

The Court can easily find these present in this case. The violation of the law and Carey's knowledge of the violation is obvious on its face. The third element is also satisfied by Carey

10

orchestrating and directing the assault take place by the other inmates. While the Restatement (Second) of Torts makes no mention of intent, Carey's intent to willfully and maliciously injure Reece is clear from the Stipulation. *See In re Smith*, 2012 WL 425196, at *7 (Bankr. D. Colo. 2012) (aiding and abetting nondischargeability claim failed because the state court record was devoid of a finding of intent).

To summarize, the Court finds that summary judgment should be granted in favor of Reece on each of his Counts in the complaint. Each count, supported by the Stipulation, evidences an injury resulting from a willful and malicious act by Carey.

Carey filed a response in opposition to the motion for summary judgment. This response was supported with just a copy of the Verdict. Carey makes reference to the complaint from the Eastern District action. He argues that the first count of the Eastern District Complaint (violation of 42 U.S.C. § 1983) did not require a finding of willful and malicious intent. Specifically, he argues that while the Stipulation was "an admission that he willfully deprived Reece of his right to be free from unreasonable force, it was not an admission that he willfully and maliciously intended the injury suffered by Reece." He further makes reference to the negligence count from the Eastern District Complaint. While agreeing that Reece stated a viable negligence claim, he argues Reece failed to provide the necessary argument or evidence to warrant a nondischargeable summary judgment on this claim.

While Carey is correct in what he states, he is missing the point that the Summary Judgment motion before this Court is based upon the complaint filed in this adversary proceeding, not the complaint filed in the Eastern District. The allegations in the complaint filed in this case, while based on the same operative facts, are not the same allegations raised in the Eastern District. So,

11

while willful and maliciousness may not have been elements to the Eastern District action, they are certainly applicable to the allegations raised in this action.

Moreover, in determining whether a debt arising out of a judgment is within an exception to discharge, the exact language of the judgment itself is not controlling, but rather the Court must look to the "entire record in the original action" to determine the "exact nature of the debt on which such judgment was based." *In re Messer*, 500 B.R. 875, 880 (Bankr. E.D. Mich. 2013) *citing Tudryck v. Mutch*, 320 Mich. 86, 30 N.W.2d 512, 514 (1948) (Bankruptcy Act case). Consequently, a court may look behind the language of a judgment, to ascertain the nature of the debt, and, if it is ascertained to be one which should be excepted from discharge in bankruptcy, it must be so declared. *Id.*

Carey's final argument goes to apportionment of the damages between nondischargeable claims and claims that would be subject to discharge. In his response to the summary judgment motion, Carey argues that the Court cannot use the Verdict from the Eastern District action because it does not differentiate between the separate causes of action asserted by Reece, some of which do not require a finding of willful and malicious intent to cause injury. In support of this argument, Carey cites *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). In that case, a libel complaint pleaded that the debtor published a false statement "either with knowledge of its falsity or in reckless disregard of whether it was false." *Id.* The jury instructions contained the language "knowledge of its falsity and in reckless disregard of the truth." *Id.* The bankruptcy court granted the creditor's motion for summary judgment, which was affirmed by the district court. On further appeal, the Sixth Circuit held that "[because] the jury's verdict was general, it is impossible on the current state of the record to divine whether the jury verdict rested on a finding that [debtor] acted knowingly or

merely recklessly. Accordingly, genuine issues of material fact exist which render this case in its current posture inappropriate for summary judgment." *Id.*

This Court believes Carey's reliance on Wheeler is misplaced. *Wheeler* did find that upon the record before it, the bankruptcy court could not enter a summary judgment. It "was not in the proper posture for summary judgment." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Circuit went on to direct the bankruptcy court on remand to examine the entire trial transcript and to review the record for a determination of whether the jury verdict and judgment encompassed a finding that the debtor acted willfully and maliciously in that he knew the published statements were false.

In this case, the record, including the Stipulation, clearly include a determination, and admission, that the Verdict encompassed findings that support the conclusion that Carey acted willfully and maliciously in that he knew his actions would cause harm.

Even if the Verdict, standing alone, insufficiently apportioned damages, the Court, based upon the Stipulation, would still conclude that all of the damages were attributable to the Carey's willful and malicious conduct. The bankruptcy court for the Southern District of Georgia dealt with a similar situation in *In re Hooks*, 238 B.R. 880 (Bankr. S.D. Ga. 1999). The *Hooks* case involved a state court default judgment on four separate counts, including fraud. When the debtor raised the issue of damages apportionment, the court noted

> the question of apportionment of damages among several claims is a common issue, since it is unusual to bring a suit for fraud alone. Fraud would necessarily occur in a context that would give rise to other claims such as breach of contract or conversion.... The default judgment against Mr. Hooks explicitly "included fraud."

*Id.* at 886. Like the *Hooks* case, this case explicitly includes allegations of willful and malicious

13

actions on the part of Carey. The fact that a negligence claim was also included does not prevent the Court from finding that the whole Verdict is nondischargeable.

The court in *In re Bukowski*, 266 B.R. 838 (E.D. Wis. 2001), analyzed the apportionment issue in the context of § 523(a)(6). The plaintiff obtained a judgment against the debtor for breach of contract, promissory estoppel, unjust enrichment and breach of fiduciary duty. *Id.* at 841. In the subsequent dischargeability proceeding, the debtor argued that collateral estoppel should not apply because the damages were not apportioned between the dischargeable claims and the non-dischargeable claims. *Id.* at 846.

> The court declined the debtor's invitation to require specific apportionment, finding [plaintiff's] allegations are simple: that [debtor] prevented him from receiving benefits to which he was legally entitled. Both the compensatory and punitive damage awards were based on this conduct. The jury's award of punitive damages was judgment that such conduct was willful and malicious. Thus, none of this award is dischargeable.

*Id.*

Like the above referenced cases, this Court finds that the failure of the Verdict to apportion damages does not preclude the Court from finding that the whole Verdict should be excepted from discharge. As stated above, the Court has before it a summary judgment motion, supported by a Stipulation agreed to by Carey. That Stipulation outlines several willful and malicious taken by Carey against Reece which directly led to the Reece's injury.

In sum, the Verdict, supported by the Stipulation, establishes that Carey intended to injure Reece and knew that his actions were substantially certain to result in injury. His conduct went well beyond what can be characterized as negligent or reckless. Accordingly, the Court concludes that Carey's actions were both willful and malicious for purposes of § 523(a)(6). *In re Gilmore*, 590

B.R. 819, 838 (Bankr. N.D. Ill. 2018) ([As] long as the jury in a prior proceeding has found against the debtor "upon specific issue[s] of fact," which, when viewed in the aggregate, "independently comprise elements of a [subsequent] dischargeability claim," collateral estoppel precludes the debtor "from relitigating those underlying facts in bankruptcy court.")

This analysis applies to both the amounts contained in the Verdict as well as the amount awarded to Reece in the Memorandum awarding attorney's fees. When consequential damages arise from the same conduct as the underlying nondischargeable judgment, those damages are not dischargeable under § 523(a)(6). *Cohen v. de la Cruz*, 523 U.S. 213 (1998). In *Cohen*, the debtor argued that the nondischargeable judgment should be limited to the amount of damages caused by the fraud, but that it should not include the punitive damages or attorney's fees also included in the state court judgment. The Supreme Court did not agree and held that § 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that the award of treble damages and attorney fees fell within the scope of the exception to discharge. It held that "[o]nce it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge." *Id.* at 218-19. *See also Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 621 (Bankr. S.D. Ohio 2011); *DirecTV, Inc. v. Karpinsky*, 328 B.R. 516, 528 (Bankr. E.D. Mich. 2005) (applying the reasoning of *Cohen* in holding that statutory damages and attorney's fees awarded for satellite signal piracy were nondischargeable under § 523(a)(6)).

Here, the attorney's fees awarded relate solely to the Verdict, and the debt pursuant to that Verdict has been deemed nondischargeable by this Court. Therefore, the attorney's fees awarded are also nondischargeable under § 523(a)(6).

Given the case law and the analysis above, the Court finds that all components of the

Verdict, including the punitive damages and the attorney's fees awarded in the Memorandum, arise from the same conduct as the underlying nondischargeable judgment. Accordingly, the entire debt is nondischargeable under § 523(a)(6). Therefore, Reece's Motion for Summary Judgment should be granted. An Order incorporating the findings herein accompanies this Memorandum Opinion.

*/s/ Alan C. Stout*
Alan C. Stout
United States Bankruptcy Judge
Dated: May 23, 2022

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: ) | | |
| ) | | |
| WILLIAM A. CAREY and ) | | |
| RUBY L. CAREY ) | | CASE NO. 16-31579 |
|         Debtors ) | | |
| ) | | |

| | | |
|---|---|---|
| JOSH REECE ) | | |
|         Plaintiff ) | | |
| v ) | | A. P. NO.: 16-3074 |
| WILLIAM A. CAREY ) | | |
|         Defendant ) | | |

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Motion for Summary Judgment filed by the Plaintiff John Reece is **GRANTED**. There are no genuine issues of material fact, and Plaintiff is entitled to Judgment in his favor as a matter of law. Therefore, the debts set forth in the Verdict and Judgment from the action from the Eastern District of Kentucky, as well as the attorney's fees awarded in the Memorandum Opinion & Order are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). This is a final and appealable judgment.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: May 23, 2022